953 F.2d 637
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Linda K. BIRCH; Raymond T. Birch, Plaintiffs-Appellees,
v.
The BICOASTAL CORPORATION, formerly known as The Singer
Company; Sears, Roebuck & Co., Defendants-Appellants,
and
Ryobi Motor Products Corporation, Defendant.
 No. 91-1587.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1991.
Decided Jan. 29, 1992.
 
 Appeal from the United States District Court for the District of South Carolina, at Anderson. G. Ross Anderson, Jr., District Judge. (CA-90-1168-8-3)
 Argued: James Crawford Roberts, Mays & Valentine, Richmond, Va., for appellants; Joseph Grady Wright, III, Wright & Trammell Law Firm, Anderson, S.C., for appellees.
 On Brief: Dabney J. Carr, IV, Mays & Valentine, Richmond, Va., William Douglas Gray, Watkins, Vandiver, Kirven, Gable & Gray, Anderson, S.C., for appellants.
 D.S.C.
 REVERSED.
 Before ERVIN, Chief Judge, DONALD RUSSELL, Circuit Judge, and GERALD W. HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 GERALD W. HEANEY, Senior Circuit Judge:
 
 
 1
 The Bicoastal Corporation appeals from a jury's finding that it negligently designed and negligently failed to warn Linda and Raymond Birch on how to use the circular power saw that injured Linda Birch. Because we hold as a matter of law that Linda Birch was contributorily negligent, we reverse.
 
 BACKGROUND
 
 2
 Bicoastal manufactured and Sears retailed the circular saw Raymond Birch received as a Christmas gift in 1987. Of its various safety features, the one relevant here is a spring-activated lower blade guard which retracts as the saw meets the wood it is cutting. This blade guard extends from the rear of the blade to the front and closes as the saw is retracted from the wood being cut. Consequently, the saw blade is never exposed above the wood being cut, and the lower blade guard completely closes in less than two-tenths of one second after the saw is removed from the wood. At the time of the accident, all of the saw's safety features, including the lower blade guard, were in working order. Prior to the accident, the Birches had used the saw between ten and twenty-five times and both had read the owner's manual each time they used the saw. In fact, both claimed to have read the entire manual immediately before the accident.
 
 
 3
 The accident occurred while the Birches were rip cutting a two foot long, 7 1/4 inches wide, and 3/4 inch thick piece of wood. Raymond Birch operated the saw while Linda Birch held the two foot long board on a table. Initially, the Birches faced one another at opposite ends of the board while Raymond cut it. After cutting approximately one-half of the board, Raymond turned the board around and Linda Birch moved behind him to hold the two foot board on the table while Raymond cut the other half of it.
 
 
 4
 Before Raymond began the second cut, Linda secured the board with both hands; the precise placement of her hands to secure the board is unclear. It is undisputed, however, that Linda used her hands exclusively to stabilize the board while her husband proceeded to cut it. Raymond manually retracted the lower blade guard so that the blade was exposed prior to entering the board and inserted the blade into the partially finished cut and began to finish cutting. Suddenly and soon thereafter, the saw kicked back up and out of the board and lacerated two of Linda's right hand fingers.
 
 
 5
 As a result of the accident, the Birches filed suit against Bicoastal and Sears for negligence, breach of warranties, strict liability, and loss of consortium. Based on Bicoastal's and Sears' negligence, a jury awarded Linda Birch compensatory damages of $300,000 and punitive damages totaling $25,000, while also awarding Raymond Birch $25,000 for loss of consortium. After the district court denied their motion for judgment notwithstanding the verdict or alternatively a new trial, Bicoastal and Sears appealed to this court.[1]
 
 DISCUSSION
 I. Relevant Law
 
 6
 "Contributory negligence is a lack of ordinary care on the part of a person injured by the negligence of another which combines and contributes to the injury as a proximate cause without which the injury would not have occurred." Baxley v. Rosenblum, 400 S.E.2d 502, 506 (S.C.Ct.App.1991) (quoting South Carolina Ins. Co. v. James C. Greene & Co., 348 S.E.2d 617 (S.C.Ct.App.1986)).[2] South Carolina remains one of the few states that recognizes the contributory (as opposed to comparative) negligence defense. "Accordingly, the common law, as it presently exists in South Carolina, bars [a plaintiff] from recovering anything against a defendant whose negligence also caused his injuries, even if the defendant was guilty of greater negligence." South Carolina Ins. Co. v. James C. Greene & Co., 348 S.E.2d 617, 620 (S.C.Ct.App.1986) (citations omitted). Determining contributory negligence turns on whether the plaintiffs exercised reasonable conduct in light of the particular facts involved and is usually a jury question. See Williams v. Kinney, 226 S.E.2d 555, 557 (S.C.1976).
 
 
 7
 "[I]mputed contributory negligence on the basis of the marriage alone has vanished from the law of most jurisdictions." William L. Prosser, Law of Torts 490 (4th Ed.1971); see also Restatement (Second) of Torts § 487 (1965) ("The negligence of husband or wife does not bar the other spouse from recovery for his or her own physical harm."). South Carolina law reflects this principle, therefore, we focus on the negligence of Linda Birch and not on that of her husband. See, e.g., Lollar v. Dewitt, 179 S.E.2d 607, 609 (S.C.1971).
 
 II. Contributory Negligence
 
 8
 Prior to the accident, the Birches had used the circular saw somewhere between ten and twenty-five times during the year-and-a-half they owned it. During each of these occasions, Linda Birch held the object being cut, while her husband operated the saw. Before each use, both of the Birches read the owner's manual. Both Birches testified that they read the owner's manual before using the saw on the day of the accident.
 
 
 9
 The owner's manual set forth extensive and specific instructions regarding both the safe use of and the dangers inherent in operating a circular saw. Prominent among these instructions were warnings (1) to keep hands away from the cutting area; (2) to secure the work with clamps; and (3) to never reach under the work while the blade is rotating. The manual also contained the following instructions to guard against kickbacks: (1) always keep the correct blade setting; (2) always use a straight edge while rip cutting; and (3) always let the blade reach full speed before guiding it into the work.
 
 
 10
 The Birches did not comply with these instructions. The Birches admitted that at the time of the accident, they did not follow the instruction to clamp the work, and instead Linda used her hands to hold the board: whether she placed one of her hands under the board while she secured is unclear, although in one instance Linda did affirm that her non-injured left hand was under the board and in another instance, her husband agreed that her left hand fingers were underneath the board. The Birches' expert witness conceded that the blade setting was too deep. This witness and Raymond Birch both admitted that a straight edge guide was not being used at the time of the accident. Both Linda and Raymond Birch and their expert witness further conceded that the blade was not fully rotating when Raymond reinserted it back into the work. Finally, the Birches' expert witness agreed that the Birches used unsafe operating procedures on the day of the accident.
 
 
 11
 This final admission is of particular importance. As noted above, the relevant legal analysis is whether Linda Birch exercised reasonable and ordinary care in assisting her husband. We hold that she did not. Ignoring the numerous safety precautions recited by the owner's manual is indicative of this fact. More generally, however, standing behind the operator of a power saw to secure a board that is only two feet long while it is being cut amounts to negligent behavior. Because the board was two feet long and was already half-cut, Linda had only about one foot of board which she could secure with her hands; indeed, Linda testified that her hand was within one foot of the blade.
 
 
 12
 Similarly, because of the short length of the board, she had to stand immediately behind her husband while he operated the saw and thereby expose herself to the danger inherent in a rotating, steelbladed, power saw. See Steele v. Lynches River Elec. Coop., Inc., 191 S.E.2d 253, 255 (S.C.1972) (contributorily negligent plaintiff "charged with knowledge that contact with a wire charged with electric current is attended with danger"). Linda Birch assumed her position behind her husband and the saw, although she was aware that the saw might kickback. We conclude that Linda Birch's actions "contribute[d] to the injury as a proximate cause without which the injury would not have occurred," and therefore rule that under South Carolina law her contributory negligence bars recovery in this suit. See Baxley v. Rosenblum, 400 S.E.2d 502, 506 (S.C.Ct.App.1991) (citing South Carolina Ins. Co. v. James C. Greene & Co., 348 S.E.2d 617 (S.C.Ct.App.1986)); see also Nevils v. Singer Co., 533 So.2d 157, 160 (La.Ct.App.1988) (concluding that plaintiff's fault in failing to heed explicit warnings about use of the tool was the cause of the accident in a power saw suit against Sears and Bicoastal's predecessor in interest).[3]
 
 III. Gross Negligence
 
 13
 Having concluded that Linda Birch was contributorily negligent, we must next decide whether the defendants were guilty of gross negligence. "This is in accord with the settled rule that contributory negligence is not a defense when the injury complained of is shown to have been wilfully or recklessly done." Dudley Trucking Co. v. Hollingsworth, 134 S.E.2d 399, 402 (S.C.1964) (citation omitted).
 
 
 14
 To award punitive damages to Linda Birch the jury had to find that Bicoastal and Sears acted recklessly, willfully, or wantonly. See Cohen v. Allendale Coca-Cola Bottling Co., 351 S.E.2d 897, 900 (S.C.Ct.App.1986). As a matter of law, the jury erred in finding that the defendants acted recklessly, willfully, or wantonly. "Conduct is willful, wanton, or reckless when it is committed with a deliberate intention under such circumstances that a person of ordinary prudence would be conscious of it as an invasion of another's rights." Cooper v. County of Florence, 385 S.E.2d 44, 48 (S.C.Ct.App.1989) (citing Cohen v. Allendale Coca-Cola Bottling Co., 351 S.E.2d 897, 900 (S.C.Ct.App.1986) ("It is the present consciousness of wrongdoing that justifies the assessment of punitive damages against the tortfeasor.") (citation omitted)).
 
 
 15
 There is no evidence that Bicoastal or Sears deliberately intended to harm Linda Birch or any purchaser of their circular saw. Moreover, no "smoking gun" evidence was introduced which would tend to show that the defendants foresaw the type of accident that injured Linda Birch. Only the fact that the defendants stipulated that kickbacks were a known danger hints at any reckless disregard for the safety of the Birches. The Birches' expert witness claimed that a safety device known as a "riving knife" would have prevented the kickback that lead to the accident; earlier editions of the circular saw contained this feature, and the Birches allege that it was deleted in order to increase profits. Had evidence been produced that demonstrated that the defendants had prior knowledge that kickback accidents resulted due to the lack of a riving knife, we might find the Birches' argument persuasive. Without such evidence, we cannot conclude that Bicoastal or Sears possessed the present consciousness of wrongdoing that must support a finding of willful, wanton, or reckless conduct.
 
 IV. Conclusion
 
 16
 Accordingly, we reverse the jury verdict and hold that the contributory negligence of Linda Birch precludes her from recovering damages from Bicoastal or Sears.
 
 
 17
 REVERSED.
 
 
 18
 ERVIN, Chief Judge, and DONALD RUSSELL, Circuit Judge, joined.
 
 
 
 [1]
 Although the defendants raised numerous arguments on appeal, because we find it decisive, we will limit our discussion to the contributory negligence issue
 
 
 [2]
 The parties do not dispute that South Carolina law controls this case
 
 
 [3]
 Because South Carolina law does not impute the negligence of a spouse to her partner, Linda Birch's contributory negligence alone does not defeat her husband's loss of consortium claim against the defendants. For many of the same reasons discussed in the text, we find that Raymond Birch was also contributorily negligent, thus defeating his loss of consortium claim. See William L. Prosser, Law of Torts 893-894 (4th Ed.1971)